UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11CV-26-H

EARL W. WRIGHT                                                                                               PLAINTIFF

V.

RASHID FAIYAZ, M.D.                                                                      DEFENDANT

**MEMORANDUM OPINION AND ORDER**

The remaining Defendant here, Rashid Faiyaz, M.D. ("Dr. Faiyaz"), has moved for summary judgment. The matter is now fully briefed. For the reasons that follow, the Court will sustain the motion.

I.

On June 23, 2010, Wright was transferred to the Kentucky State Reformatory ("KSR") for treatment for cardiac problems identified in a stress test. At that time, Wright had already been prescribed various medications, including Simvastatin, a lipid-lowering drug to reduce serum cholesterol, and Gemfibrozil, a triglyceride lowering drug also used to reduce the amount of blood cholesterol. Dr. Faiyaz had not prescribed either of those medications. Soon after his arrival at KSR, Wright received a Transfer/Intake Mental Health Screening, at which time it was noted that he had no known drug allergies.

According to Dr. Faiyaz's affidavit and the medical records, the following is the course of Wright's treatment. On June 30, 2010, Wright saw Dr. Faiyaz who requested an appointment with the UK Cardiology Clinic as soon as possible. Dr. Faiyaz also requested that an echocardiogram report be attached to the UK Cardiology Clinic consultation report. Dr. Faiyaz

saw Wright again on July 16, 2010, at which time he conducted a physical exam. Wright denied any chest pain or shortness of breath, and stated he was "feeling fine." Dr. Faiyaz noted that Wright's hypertension was being well controlled, and requested an appointment with dermatology for an issue with skin cancer.

On July 29, 2010, Wright presented to the KSR nurse's station with a complaint of bilateral flank pain.[1] Both of his eyes had dark circles and it was noted that he appeared gaunt and ashen. Wright further stated that his urine was brown and that he was experiencing hesitancy and dribbling upon urination. He denied any abdominal pain, burning with urination, nausea or vomiting. A urine specimen was collected, Dr. Kemen was notified, and his condition was monitored.

On July 30, 2010, Wright again presented to the KSR nurse's station with complaint of flank pain. He stated that his urine remained dark brown in color. He reportedly felt weak and lightheaded. He again denied any abdominal pain, any burning sensation with urinating, nausea or vomiting. Dr. Kemen initially suspected that Wright was suffering from a urinary tract infection. Consequently, he obtained a urine specimen for culture and prescribed Bactrim DS.

On July 31, 2010, Wright complained of bilateral jaw pain and other muscle and joint pains. He stated that he was having "chest [pain] that didn't quite feel like it was his heart." He also complained of shortness of breath. Wright was not in apparent distress and it was noted that his respirations were even and unlabored, although he did complain of feeling weak and fatigued. However, his gait was unsteady and his answers to questions were slow and incorrect.

---

[1] Dr. Faiyaz was away on vacation from July 23/24, 2010 until August 9/10, 2010. During that time, Wright's care was primarily under the supervision of Dr. Frederick Kemen.

2

Wright was given an EKG and lab work, and Dr. Kemen was notified. Dr. Kemen ordered that, in the event Wright's lab work was abnormal, that he be sent to Baptist Hospital Northeast ("BHNE") for further evaluation and treatment.

On August 1, 2010, Wright was sent to BHNE pursuant to Dr. Kemen's order. While at BHNE, Wright's labs revealed elevated enzyme levels in his blood, indicating kidney failure. Dr. Kemen discontinued both the Simvastatin and Gemfibrozil, and BHNE began treating Wright for kidney failure, which included two (2) days of dialysis. A renal ultrasound was conducted on August 1, 2010, which revealed cysts on both of Wright's kidneys, but no hydronephrosis and no masses; otherwise the renal ultrasound was normal.

A diagnosis of Rhabdomyolysis was suggested. Rhabdomyolysis is an uncommon, but serious adverse reaction to the combined use of a statin and Gemfibrozil. Given Wright's prior recent report of no known drug allergies and his combined use of those medications for a period of six (6) months without incident, Dr. Faiyaz did not believe that he would have an adverse reaction to them in the future. For those reasons, Dr. Faiyaz made no change to those medications.

While at BHNE, Wright's labs continued to improve and his urine output steadily increased. He was discharged back to KSR on August 9, 2010. Following his release, Dr. Faiyaz followed the discharge instructions that Wright have a repeat Basic Metobolic Panel ("BMP") every one to two weeks until his renal function improved. Dr. Faiyaz requested the first BMP on August 10, 2010, which he reviewed on August 12, 2010. Wright's Blood Urea Nitrogen ("BUN") level was elevated and an IV was started and continued into August 13, 2010. On August 13, 2010, Wright told Dr. Faiyaz that he was feeling better and he had good urine

output.

On August 18, 2010, Dr. Faiyaz reviewed Wright's labs, and noted that his BUN was improving and advised him to continue drinking plenty of water. On August 24, 2010, Dr. Faiyaz saw Wright and noted that he stated he was feeling much better and denied any complaints. Repeated lab work indicated that Wright's renal functions were continuing to improve, and Dr. Faiyaz ordered that his current treatment be continued. By August 24, 2010, Wright stated he was feeling better and denied any complaints. Dr. Faiyaz discharged him to the KSR yard, noting that his renal failure was resolved, but that his BMP would be checked again on September 1, 2010.

Dr. Faiyaz last saw Wright sometime in September, 2010. At that time, Wright was discharged back to his regular bunk at KSR and was thereafter treated for his heart condition by someone other than Dr. Faiyaz. Having been successfully treated for all of his medical problems, Wright has since been transferred from KSR, where medical inmates are housed, to another correctional facility.

II.

Wright brought this *pro se* action under 42 U.S.C. § 1983 against KSR Warden Cookie Crews, Rashid Faiyaz, M.D. and Diamond Pharmacy Services, claiming deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. Specifically, Wright alleges in his complaint that:

- Dr. Faiyaz failed to tell him that he changed his cholesterol medication, which could cause kidney failure or risk to his life;

- Dr. Faiyaz did change his cholesterol medication without his knowledge, which caused him kidney failure and nearly cost him his life;

- Warden Crews is responsible for the actions and misconduct of Dr. Faiyaz; and
- Diamond Pharmacy Services' cholesterol medication caused him to have kidney failure.

All Defendants were sued in their individual and official capacities for monetary and punitive damages and injunctive relief.

Upon screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir. 1997), the Court dismissed all of Wright's claims except for his individual capacity claim against Dr. Faiyaz for deliberate indifference. Dr. Faiyaz answered, denying the material allegations of that claim, and has since obtained Wright's medical records from KSR pursuant to notice.

III.

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis of its motion" and identifying the matter it believes "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A fact is material when it is capable of affecting the outcome of a suit under governing law, and a dispute about a material fact is "genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its burden, then the non-moving party must cite to particular parts of the record showing a fact that is genuinely disputed; or show that the materials cited by the movant do not establish the absence of a genuine dispute. Fed.R.Civ.P. 56(c)(1)(A) and (B). If the non-moving party fails to show a genuine dispute exists, the court may grant the moving

5

party summary judgment under Fed.R.Civ.P. 56(3). It is insufficient that a non-moving party rest on its pleadings; he must present some "specific facts showing that there was a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. This requires a non-moving party to "do more than simply show that there is some meta-physical doubt as to the material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately, the Sixth Circuit has stated that the standard for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

IV.

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrence v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002). Thus, to state a cognizable claim, a prisoner must show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Terrance,* 286 F.3d at 843 (quoting *Farmer*, 511 U.S. at 842). There may be deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Id.* (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir.

6

1989)).

The standard for deliberate indifference includes subjective and objective components. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). When considering such a claim, the Curt should ask both if the officials acted with a sufficiently culpable state of mind and if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

"[T]he subjective intentions of prison authorities must be demonstrated by objective manifestations of such intent, and cannot be proved by factually unsupported, conclusory opinions of the court or of the prisoners or their representatives." *United States v. Michigan*, 940 F.2d 143, 154 n.7 (6th Cir. 1991). In examining deliberate indifference to medical needs, the Sixth Circuit has stated:

> Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain. However, the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.

*Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted).

The objective component of an Eighth Amendment deliberate indifference claim is governed by "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

> [O]nly those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. A similar analysis applies to medical needs. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if

7

>those needs are "serious."

*Id.* at 9 (citations omitted).

Wright alleges that Dr. Faiyaz changed his medications, which subsequently caused his kidney failure. However, Wright did not come under Dr. Faiyaz's care until he was transferred to KSR from another correctional facility. At the time of his transfer, Wright had already been prescribed Simvastatin and Gemfibrozil by other providers. Dr. Faiyaz neither prescribed the medications, nor did he order any changes to them. Those medications were effectively controlling Wright's high cholesterol without any adverse consequence to him as reflected in his medical record.

Wright has presented no evidence that Dr. Faiyaz acted with a culpable state of mind. Wright was already tolerating his prior prescribed medicines well at the time he was transferred to KSR and first seen by Dr. Faiyaz. There is no evidence that Dr. Faiyaz consciously ignored or disregarded any signs of Wright's kidney failure. Those symptoms did not arise until July 29, 2010, when Dr. Faiyaz was away on vacation. Nor is there any evidence that Dr. Faiyaz knew that Wright would have a future adverse reaction to those medications after having taken them with a good medical result and without incident for six (6) months. Wright has presented no medical evidence linking any actions of Dr. Faiyaz to any serious medical condition Wright has experienced.

In conclusion, none of the evidence shows inadequate care by Dr. Faiyaz. Indeed, the medical records reflect that Wright received timely and adequate medical care. Simvastatin and Gemfibrozil are commonly used in combination to control high cholesterol. Wright had been taking that combination of medications for six (6) months prior to treatment by Dr. Faiyaz, there

was no medical reason for him to alter Wright's existing cholesterol medication regimen. Wright received adequate and timely medical care for all of his medical problems, including renal failure.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is SUSTAINED and Plaintiff's remaining claims are DISMISSED WITH PREJUDICE.

This is a final order.

cc: Earl W. Wright, *Pro Se*
Counsel of Record